## In Equity.

LOUISE H. COBURN et als. *vs.* EDWARD P. PAGE et al.

Somerset.     Opinion June 5, 1909.

*Trusts.   Tenants in Common.   Adverse Title Purchased by Co-tenant.   Such Co-tenant holds the Same in Trust for All Co-tenants.*

Tenants in common stand in such confidential relation to one another in respect to their interests in the common property, and the common title under which they hold it, that it would generally be inequitable to permit one, without the consent of the others, to buy in an outstanding adversary claim and assert it for his exclusive benefit to undermine the common title and thereby injure and prejudice the interests of his co-tenants. In such case the purchasing tenant is regarded as holding the claim so purchased in trust for the benefit of all his co-tenants, in proportion to their respective interests in the common property, who seasonably contribute their share of his necessary expenditures.

It is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject, created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself and thus undermine and oust his companion.

Community of interest produces community of duty, and there is no real difference, on the ground of policy and justice, whether one co-tenant buys up an outstanding incumbrance, or an adverse title, to disseise and expel his co-tenant.

On February 19, 1902, the defendant, Edward P. Page, and the original plaintiffs were tenants in common of a certain township of land in Somerset county known as Moxie Gore. Mr. Page owned one-fourth and the plaintiffs three-fourths. About that time Mr. Page, and some, at least, of the other co-tenants, learned that their common title to the township was derived through a chain of conveyance beginning with a mortgage title as far back as 1835 and 1836, and that the equity of redemption thereof had never been foreclosed or released, being apparently still outstanding. Thereupon Mr. Page, without any arrangement or understanding with his co-tenants, purchased at his own expense three-fifths in common and undivided of such outstanding right of redemption of the common property and had the same conveyed to his wife Lizzie M. Page, the other defendant. Mrs. Page paid no part of the consideration, and no question was raised but that this interest so conveyed to her was subject to the same

trusts, if any, as it would have been if Edward P. Page had taken the deed in his own name. The plaintiffs and the defendant Edward P. Page, jointly, and those under whom they claimed title, had been in possession of the common property for many years, using and enjoying it as owners, and claiming and supposing that their common title was the absolute title to it. After the purchase of the outstanding right of redemption by Mr. Page, the plaintiffs seasonably made request upon him for their share of his purchase and offered to reimburse him proportionally for his expenses incurred, and he refused their request. Thereupon the plaintiffs brought a bill in equity to obtain a decree that each of the defendants held all title in any way acquired by either of them by virtue of said deed to Mrs. Page in trust for, and must convey the same to, all the plaintiffs as tenants in common with said Edward P. Page to the extent and in proportion to their respective ownerships therein, and a decree to that effect was made and the defendants appealed.

*Held:* 1. That under such facts and circumstances the outstanding right of redemption under the old mortgages must be held to be an adverse claim to the common interests and title, and that it would be inequitable to permit Mr. Page to assert that portion of such adversary claim which he had bought in for his own exclusive benefit, to destroy the common title under which he and his co-tenant for many years held joint possession of the property.

2. That the ruling that the want of demand on Mrs. Page was important only as bearing on the matter of costs against her, was not error.

3. That the decree of the sitting Justice must be sustained.

In equity. On appeal by defendants. Dismissed. Decree sustained.

Bill in equity brought by the plaintiffs, eighteen in number, against Edward P. Page and Lizzie M. Page, his wife, praying that a certain outstanding right of redemption of certain real estate owned by the plaintiffs and the said Edward P. Page as tenants in common, and which said outstanding right had been purchased by their co-tenant, the said Edward P. Page, and by his direction conveyed to his said wife, be conveyed to them in accordance with their respective interests in the real estate. Answers were duly filed by each of the defendants.

The cause was heard by the Justice of the first instance on bill, answers and proof, and who, after hearing, ordered, adjudged and decreed as follows:

"1. That the bill be sustained against both defendants, and with costs against defendant Edward P. Page.

"2. That the defendants respectively hold all title acquired by them, or either of them, by virtue of the deed of Frank B. Devereaux, Marian Devereaux, and Eliza D. Devereaux to Lizzie M. Page, of township numbered one, Range 5, east of the Kennebec River, in what is known as Bingham's Kennebec Purchase, dated February 19, 1902, and recorded in Somerset Registry of Deeds, Vol. 237, page 236, in trust for all the plaintiffs as tenants in common with the defendant Edward P. Page in said land, and to the extent and in proportion to their respective ownerships therein, to wit: all the plaintiffs, except John P. Clark, Charles H. Clark, and Hiram Moore, one half; the said John P. Clark, Charles H. Clark and Hiram Moore each one twelfth, and the defendant Edward P. Page, one fourth.

"3. That upon payment or tender to Edward P. Page by said plaintiffs of their respective or collective share of the expense incurred by said Page in procuring the above mentioned deed, to wit, their share being three fourths of $765.27, and interest on $400 of that sum from February 19,.1902 to the time of payment or tender, and interest on the remainder ($365.27) from July 1, 1902, to the time of payment or tender, within sixty days from the date of the filing of this decree, or if appeal be taken, within sixty days from the receipt of the final certificate from the law court, the defendants, and each of them, convey to the plaintiffs all title held by either of said defendants under the deed aforesaid of Frank B. Devereaux and others to the extent of and in proportion to the plaintiffs' respective ownerships in said land, as aforesaid.

"4. That if the plaintiffs shall fail to pay or tender the aforesaid amount within the time aforesaid, the defendants shall hold the title that they, or either of them, has under said deed, free and discharged of said trust in favor of the plaintiffs."

From this decree the defendants appealed to the Law Court as provided by Revised Statutes, chapter 79, section 22.

The case is stated in the opinion.

*Butler & Butler, and Charles F. Johnson,* for plaintiffs.

*Walton & Walton, E. F. Danforth, and Foster & Foster,* for defendants.

SITTING: EMERY, C. J., SPEAR, CORNISH, KING, BIRD, JJ.

KING, J.  Bill in equity before this court on defendants' appeal.

On February 19, 1902 the defendant, Edward P. Page, and the original plaintiffs were tenants in common of a certain township of land in Somerset county known as Moxie Gore.   Page owned one-fourth and the plaintiffs three-fourths.   About that time Page, and some, at least, of the other co-tenants, learned that their common title to the township was derived through a chain of conveyances beginning with a mortgage title as far back as 1835 and 1836, and that the equity of redemption thereof had never been foreclosed or released, being apparently still outstanding.

Thereupon Edward P. Page, without any arrangement or understanding with his co-tenants, purchased at his own expense three-fifths in common and undivided of such outstanding right of redemption of the common property and had the same conveyed to his wife, Lizzie M. Page, the other defendant, by deed dated February 19, 1902.   Mrs. Page paid no part of the consideration, and no question is raised but that this interest so conveyed to her is subject to the same trusts, if any, as it would have been if Edward P. Page had taken the deed in his own name.

The bill is brought to obtain a decree that each of the defendants holds all title in any way acquired by either of them by virtue of said deed to Mrs. Page in trust for, and must convey the same to, all the plaintiffs as tenants in common with Edward P. Page to the extent and in proportion to their respective ownerships therein.   The presiding Justice so decreed and this appeal is from that decree.

It is the well settled doctrine that tenants in common stand in such confidential relation to one another in respect to their interests in the common property, and the common title under which they hold it, that it would generally be inequitable to permit one, without the consent of the others, to buy in an outstanding adversary claim and assert it for his exclusive benefit to undermine the common title and thereby injure and prejudice the interests of his co-tenants.   In such case the purchasing tenant is regarded as holding the claim so purchased in trust for the benefit of all his

co-tenants, in proportion to their respective interests in the common property, who seasonably contribute their share of his necessary expenditures.

This subject has been much discussed in the decisions and text books, with varying statements of the principles upon which the doctrine rests and the reasons to be considered in its application to particular cases, but nowhere is the general principle seriously questioned, and we think it stands supported by almost universal authority. *Van Horne* v. *Fonda*, 5 Johns. ch. 407; *Venable* v. *Beauchamp*, 3 Dana (Ky) 321; (28 Am. Dec. 74 and note), *Booker* v. *Crocker*, 132 Fed. 7; *Bracken* v. *Cooper*, 80 Ill. 229; *Barnes* v. *Boardman*, 152 Mass. 391, page 393; Freeman on Cot. and Part. Sec. 154 et seq.; Am & Eng. Ency. Law (2nd ed.), Vol. 17, page 674 and cases cited in notes.

The leading case upon the subject in this country is *Van Horne* v. *Fonda*, supra, where Chancellor Kent thus stated the doctrine:

"I will not say however that one tenant in common may not, in any case, purchase in an outstanding title for his exclusive benefit. But when two devisees are in possession, under an imperfect title, derived from their common ancestor, there would seem naturally and equitably, to arise an obligation between them, resulting from their joint claim and community of interest, that one of them should not effect the claim, to the prejudice of the other. It is like an expense laid out on a common subject by one of the owners in which case all are entitled to the common benefit on bearing a due proportion of the expense. It is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject, created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself, and thus undermine and oust his companion. It would be repugnant to a sense of refined and accurate justice. It would be immoral, because it would be against the reciprocal obligation to do nothing to the prejudice of each other's equal claim, which the relationship of the parties, as joint devisees, created. Community of interest produces community of duty, and there is no real difference, on the ground of policy and

justice, whether one co-tenant buys up an outstanding incumbrance, or an adverse title, to disseise and expel his co-tenant."

Judge Story fully approved the doctrine as laid down by Kent, saying: "It stands approved equally by ancient and modern authority, by the positive rule of the Roman law, the general recognition of continental Europe, and the actual jurisprudence of England and America." *Flagg* v. *Mann*, 2 Sumn. 524.

There are some cases, however, in which the suggestion is made that the rule is applicable to tenants in common only when their interest accrues under the same instrument, or act of the parties, or of the law, or where there is some understanding among them which creates such a trust. The suggestion seems not to be much regarded. In *Rothwell* v. *Dewees*, 2 Black, 613, the Supreme Court of the United States applied the principle to the husband of a tenant in common who had bought in an outstanding title or incumbrance, and Mr. Justice Miller there said: "In this connection much stress is laid by counsel upon the language of the court in *Van Horne* v. *Fonda*, to the effect that in that case there was an equality of estate between the co-devisees. It does not appear to us, however, that any particular force was given to that fact by the learned Judge, but rather that the rule was based on a community of interest in a common title, which created such a relation of trust and confidence between the parties, that it would be inequitable to permit one of them to do anything to the prejudice of the other, in reference to the property so situated."

In *Bracken* v. *Cooper*, supra, in speaking of this suggested qualification of the doctrine as applied to tenants in common, the court said: "We do not find sufficient authority or reason to induce us to adopt the qualification of the doctrine, as applied to tenants in common, that their interest should accrue under the same instrument or act of the law. We regard the rule as founded upon the duty which the connection of the parties as claimants of a common subject creates, and not as dependent upon the accidental circumstance whether the relationship of the parties be constituted by the same instrument or act of the parties or of the law, or not."

In *Hunter* v. *Bosworth*, 43 Wis. 583, Chief Justice Ryan said: "The rule rests, not upon the strict relation of joint tenants, or tenants in common, but upon community of interests in a common title creating such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the others." Mr. Freeman in his work on Cotenancy, previously cited, says: "As the rule forbidding the acquisition of adverse titles by a co-tenant from being asserted against his companions is always said to be based upon considerations of mutual trust and confidence supposed to be existing between the parties, the question naturally arises whether the rule is applicable where the reasons on which it is based are absent. Joint tenants, tenants by entirety, and coparceners always hold under the same title. Their union of interest and of title is so complete that beyond a doubt such a relation of trust and confidence unavoidably results therefrom that neither will be permitted to act in hostility to the interests of the others in relation to the joint estate. Tenants in common, on the other hand, may claim under separate conveyances, and through different grantors; their only unity is that of right to the possession of the common subject of ownership. . . . . An examination of the decisions clearly shows that tenants in common are not necessarily prohibited from asserting an adverse title. If their interests accrue at different times, and under different instruments, and neither has superior means of information respecting the state of the title, then either, unless he employs his co-tenancy to secure an advantage, may acquire and assert a superior outstanding title, especially where the co-tenants are not in joint possession of the premises." It will be noted that the author does not approve the suggested qualification of the doctrine that tenants in common are not subject to it unless they have acquired title under the same instrument, or act of the parties, or of the law. The distinction which he points out between joint tenants and tenants in common respecting the application of this rule appears to be this: That in the case of the former the essential relation of trust and confidence necessarily exists as the result of their union of interest and title; while in the case of the

latter such essential relation does not necessarily exist in the legal status of the co-tenants, but it may be, and often is, created and developed out of the co-tenancy. And when such a relation of trust and confidence does exist between tenants in common, in respect to the common property and title, so that it would be inequitable for one to procure and assert for his exclusive benefit an adverse title against his co-tenants, this doctrine is applicable and should be enforced. We think this is a fair and conservative statement of the rule as applicable to tenants in common.

But the defendants do not contend here against this doctrine. They admit that they hold some of their purchase in trust for the plaintiffs, but they say it is only the excess of the three-fifths over what is required to fully protect Page's undivided quarter in the common property against the whole adversary claim. Or in other words, that Page, holding 1-4 or 5-20 of the common property, and having purchased only 3-5 or 12-20 of the adversary claim, is entitled to retain 5-20 to cover fully his original interest, and therefore should be required to convey to the plaintiffs but 7-20 instead of 9-20 as they claim. The learned counsel for the defendants in their brief say : "But it is equitable, that having protected his one-fourth interest, which would be five-twelfths, then he should be compelled to relinquish and give up all claim to the seven-twelfths interest, because that was not necessary for his own protection. It inured, in other words, for the benefit of the plaintiffs in this case."

Admitting, as the defendants do, and, as we think, in accord with reason and authority, that the general doctrine forbidding one tenant in common to procure and assert against his co-tenants an outstanding adverse claim, applies in this case, and that the defendants hold some part of their purchase in trust for the plaintiffs, we do not perceive on what reasonable grounds the defendants can maintain the position which they here contend for. We have cited the authorities above not merely to show that the rule is firmly established in judicial precedent, but to indicate the principles and reasons underlying the doctrine, and their application to cases arising between co-tenants, which principles and reasons must, we think, control in the determination of the defendants' contention as made here.

Previous to 1871 Abner and Philander Coburn claimed to be the owners of this township. The title of all the co-tenants is derived from them — most of them as heirs and devisees, some through mesne conveyances, including Page, who acquired his title in 1890.

While it does not so appear, we assume, from the circumstances, that the possession of the property was in all the tenants in common, and that they had been and were receiving such rents and profits in stumpage as the property yielded from time to time.

The claim acquired by the deed to Mrs. Page of February 19, 1902, was an outstanding right to redeem three-fifths of this common property from mortgages. It is no doubt true that ordinarily one tenant in common of a mortgage title may buy in the equity of redemption thereof and hold it for his exclusive benefit, if in so doing he does not injure or prejudice the interest of his co-tenant in the debt thereby secured. In such case it may be said that the right to redeem is not an adverse claim to the mortgagees' title. But that is not this case. Here the co-tenants supposed that they were the absolute owners of the common property. They had possessed and enjoyed it for many years, using it as they saw fit as owners. They may have materially decreased its value by hard cutting of timber, or they may have increased its value by improving the facilities for getting the lumber therefrom. Under such facts and conditions these discovered outstanding rights of redemption must be regarded as adverse claims to the common interests and title.

In *Bracken* v. *Cooper*, 80 Ill. 221, it is held that where a mortgagee in possession died, claiming to own the property and by his will, devised it to his sons, a grantee of one of the sons, and tenant in common of the others, could not purchase the equity of redemption of the mortgage for his own exclusive benefit as against his co-tenants, but such purchase would enure to the common benefit of himself and his co-tenants, at their option.

Was the relation between Page and his co-tenants such that it would be inequitable for him to enforce the redemption of the common property from these old mortgages? We think it was. The right of redemption may be contested, in which case one tenant in common would be prosecuting a suit against the others to extinguish

the common title.    The mortgages have been standing a very long time, during which the plaintiffs and defendant jointly, and those under whom they claim, have had the possession.    Manifestly much difficulty and conflict of interest would necessarily arise in ascertaining the rents and profits, and the amount due under the mortgages. Indeed, in such a case, because of the long joint possession, and the relation of trust and confidence naturally existing as the result of that possession, the co-tenant prosecuting redemption proceedings against the common property might have the sole knowledge and control of the essential evidence for his co-tenants' defense.

It would be inequitable to permit Page, by asserting this equity of redemption, to undermine and destroy the common title under which he and his co-tenants have for years held joint possession of the property, for, in the language of Chancellor Kent above quoted : "It is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject, created."

If this be so, and Edward P. Page, at the time he purchased in this interest in the adversary claim, stood in such relation of trust and confidence to his co-tenants that he is not permitted to assert the whole of that interest against them, then, how may he be permitted to assert any *disproportionate* share of it against them? Because of this relation of trust and confidence his purchase enured to the benefit of all.    The whole purchase must be impressed with the trust or none.    If he is permitted to assert against the common title any greater share of these three-fifths than his proportionate part, which would be 1-4 thereof, or 3-20, to that extent he will have an advantage over his co-tenants, and to that extent there will be the same breach of the relation of trust and confidence, and to that extent the same evils and inequities will arise, as if he were asserting the whole purchase.    The argument that it is equitable for him to retain enough of his purchase to protect his interest seems at first plausible and reasonable, but it is in fact not well founded. It cannot be harmonized with the reasons and principles of the general doctrine.

The doctrine here invoked by the plaintiffs is founded in equitable principles.    It is to enforce that good faith and fair dealing required

between those who stand in close and intimate relations as to their property ownerships. A failure to enforce it may result in great injustice, while under its enforcement substantial justice is always obtained, for the purchasing co-tenant is to be fully reimbursed for all his necessary expenditures for the benefit of the common property.

We think the doctrine is especially applicable to the case at bar and should be enforced so that each co-tenant, upon a pro rata contribution, will receive his pro rata share of the whole three-fifths of the equity of redemptions purchased by Page, and as conveyed to his wife, Lizzie M. Page.

The defendants can take nothing by their objection that no demand was made upon Mrs. Page. The presiding Justice found that the plaintiffs seasonably made request upon Edward P. Page for their share of his purchase and offered to reimburse him proportionally for his expenses incurred, and he refused their request. Mrs. Page was the holder of the title of the interest purchased by her husband, either as his trustee or his voluntary donee. The presiding Justice ruled that the want of demand on Mrs. Page was of "no importance, except as to the awarding of costs against her." We think this ruling was correct.

It is the opinion of the court that the entry must be,

*Decree of single Justice affirmed.*